IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| CHELSEA D. BUFFINGTON, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | CIVIL NO. 12-100 (JBS) |
| v. | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | **OPINION** |
| Defendant. | |

APPEARANCES:

Michael J. Brown, Esq.
WOLF & BROWN, LLC
228 Kings Highway East
Haddonfield, NJ 08033
 Attorney for Plaintiff

Paul J. Fishman
UNITED STATES ATTORNEY
 By:  David L. Brown
   Special Assistant United States Attorney
Social Security Administration
Office of the General Counsel
26 Federal Plaza, Suite 3904
New York, NY 10278
 Attorney for Defendant

**SIMANDLE**, Chief Judge:

**I. INTRODUCTION**

 This matter comes before the Court pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff Chelsea Buffington's application for period of disability and disability

insurance benefits under Title II of the Social Security Act (the "Act").

Plaintiff claims that the Administrative Law Judge ("ALJ") made four errors in determining that she was not disabled under §§ 216(i) and 223(d) of the Act: (1) concluding, without support of substantial evidence, that Plaintiff would not be disabled within the meaning of the Act if she stopped abusing drugs and alcohol, (2) failing to consider the effect of migraines on Plaintiff's residual functional capacity, (3) failing to consider testimony by Plaintiff's father, and (4) failing to call a vocational expert when evaluating Plaintiff's ability to work. For the reasons explained below, the Court will defer to the ALJ's determination on the first three claims, but will vacate and remand the matter to the ALJ for failing to call a vocational expert or otherwise explain the conclusion that Plaintiff's limitations would have little or no effect on Plaintiff's ability to perform unskilled, light work.

## II.  BACKGROUND

### A. Procedural background

Plaintiff Chelsea Buffington was born on September 21, 1982, and, at age 20, was diagnosed with a mood disorder on the bipolar spectrum. [Pl. Br. at 14, 18.] Plaintiff claims that she has suffered from depression, anxiety, migraine headaches and substance abuse. [Id. at 14-16.] She applied for disability

benefits on March 5, 2009, and both her initial application and her application for reconsideration were denied. [Id. at 5.] After a hearing before ALJ Frederick Timm, the ALJ denied Plaintiff's application on April 13, 2011. [Id.] The Social Security Appeals Council denied review without opinion, confirming the ALJ's decision. [Id.] Plaintiff then timely filed the instant action. [Id.]

### B. Medical history

Plaintiff was first seen at Life Counseling Services on November 3, 2003, where she was diagnosed with an unspecified mood disorder on the bipolar spectrum. [Id. at 14; R. at 238-46.] She reported anger issues, depression, anxiety attacks, substance abuse in remission, and migraines, and continued treatment there through May 1, 2004. [Id.]

Plaintiff began seeing Dr. Michael Shore, a psychiatrist, on July 28, 2004, and Dr. Shore prescribed the medication Depakote to stabilize her moods. [Pl. Br. at 15; R. at 249.] On August 12, 2004, Dr. Shore noted that Plaintiff "[a]ppears to be doing quite well" and observed that she was "clean + sober." [Id.] Plaintiff reported a panic attack a week later, and missed her next appointment, but returned on August 24, 2004, complaining of migraines, photophobia and nausea. [Id.] Dr. Shore increased the Depakote prescription, and noted that Plaintiff was "staying clean." [Id.] Dr. Shore saw Plaintiff twice more in September and

3

found her "mood stable" and noted she was "doing well in school" and "doing very well." [Pl. Br. at 15; R. at 250.] Dr. Shore observed no signs of drug use and reported "no relapse of drugs." [Id.] Dr. Shore again increased Plaintiff's medication after Plaintiff experienced more episodes of anger and missed class. [Pl. Br. at 16; R. at 251.] In November, Plaintiff reported thoughts of using drugs and increased cravings, and on December 9 canceled her session due to a "friend's emergency." [Id.]

Plaintiff began to see Dr. Shore only infrequently. On March 22, 2005, Dr. Shore noted that Plaintiff continued to take Depakote and was "clean completely from drugs" while being "full time @ school - close to Assoc. degree." [Pl. Br. at 16; R. at 252.] On April 5, 2005, Plaintiff missed another session. Dr. Shore's next entry was made on April 21, 2007, when he believed that Plaintiff had been using drugs, because she was showing symptoms consistent with post-acute withdrawal. [Id.] On May 22, 2007, Plaintiff refused to take a drug test but sought more tablets of Suboxone and Dr. Shore recommended Plaintiff begin a 30-day, inpatient rehabilitation program. [R. at 254.] Because of Plaintiff's suspected drug use and a lack of cooperation, Dr. Shore terminated his professional relationship with Plaintiff. [Id.]

On January 16, 2007, Dr. David Roeltgen, a neurologist at Cooper University Hospital, evaluated Plaintiff for her

4

headaches. [R. at 295-96.] Dr. Roeltgen wrote that Plaintiff's migraines "have never been very frequent and they are currently occurring about three to four times" a month. [R. at 295.] Dr. Roeltgen, apparently unaware of Plaintiff's substance abuse problem, noted that Plaintiff could control the headaches with Tramadol, an opioid analgesic. [R. at 22, 295.] He opined that other medications might control her "infrequen[t]" headaches, but recommended no change in treatment. [R. at 296.]

**C. ALJ's decision**

After reviewing the applicable law, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2006. [R. at 20.] The ALJ proceeded to conduct the five-step analysis set forth in 20 C.F.R. § 404.1520(a)(4) to determine if Plaintiff was "disabled" for purposes of the Act.

In step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 1, 2003, the alleged onset date of her disability. [R. at 20.] In step two, the ALJ concluded that Plaintiff had "severe medically determinable impairments that caused significant limitation in the claimant's ability to perform basic work activities": migraines, bipolar disorder and polysubstance dependence. [Id.] In step three, the ALJ determined that the combination of Plaintiff's impairments

5

met or medically equaled the impairments listed in sections 12.04 and 12.09 of 20 C.F.R. Pt. 404, Subpt. P, Appx. 1. [R. at 22-27.]

Because the record contained medical evidence of drug addiction, the ALJ next discussed whether the substance disorder was "a contributing factor material to the determination of disability" pursuant to 20 C.F.R. § 404.1535. The key inquiry for the ALJ was whether Plaintiff would still be disabled if she stopped using drugs or alcohol.

The ALJ noted that while Plaintiff was under the treatment of Dr. Shore, she developed a problem with opiates and had become addicted to Oxycontin to the point where she was treated briefly for detoxification days before an appointment with Dr. Shore, at which she denied having used drugs in the prior week. [R. at 23.] In May 2007, Plaintiff ran out of prescribed medicine too quickly, and sought more from Dr. Shore, suggesting to him a relapse into drug abuse. [Id.] The ALJ further discussed Plaintiff's treatment with various doctors and the effects of drug abuse on her condition. [R. at 23-25.] The ALJ highlighted a report from a state agency's consultant psychologist who, summarizing Dr. Shore's notes, stated that Plaintiff showed "an almost immediate stabilization . . . when she quit using drugs and was put on Depakote . . . ." [R. at 25, 290.] The ALJ stated: "I find that in several occasions that the claimant has been briefly abstinent, she has begun to improve promptly, but she

6

does not persist with the treatment." [R. at 26.] The ALJ observed that "the record shows no evidence of a full manic episode, absent alcohol and drugs." [R. at 27.] The ALJ concluded that Plaintiff "improves with abstinence" and the "fact that she worsens due to the substance abuse was clearly shown by Dr. Shore's records. As soon as she began presenting symptoms, he accurately suspected an addiction relapse. Therefore, I must find that her alcoholism and substance addiction disorder are material to the determination of disability." [R. at 26-27.]

The ALJ found that if Plaintiff stopped the substance use, her limitations stemming from "occasional migraine episodes" and bipolar disorder would still cause "more than a minimal impact on the claimant's ability to perform basic work activities" and thus "would continue to have a severe impairment or combination of impairments." [R. at 27.] However, the ALJ concluded that the remaining impairments would not meet or medically equal any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, Appx. 1. [R. at 27.]

The ALJ then found that, if she stopped the substance abuse, Plaintiff would have the "residual functional capacity" (or "RFC") to "perform light work as defined in 20 CFR 404.1567(b) except that she should be limited to perform simple, routine, repetitive tasks, in no significant interaction with the general public, and with only occasional interaction with supervisors and

co-workers." [R. at 27.] Completing steps four and five of the regulatory analysis, the ALJ found that Plaintiff had no past relevant work, she was a "younger individual" on the alleged disability onset date, and she had at least a high school education and could communicate in English. [R. at 28.] The ALJ concluded that, in light of these factors and Plaintiff's RFC, if Plaintiff stopped substance use, "there would be a significant number of jobs in the national economy that the claimant could perform . . . ." [R. at 29.] Therefore, "the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision," using the framework of 20 C.F.R. Pt. 404, Subpt. P, Appx. 2 § 202.20. [Id.]

## III. DISCUSSION

### A. Standard of review

Federal statute empowers the Court to review the Commissioner's decision to deny disability benefits. 42 U.S.C. § 405(g). The Court's review is deferential to the Commissioner's decision, and the Commissioner's factual findings are conclusive where they are supported by "substantial evidence." Id.; see also Cunningham v. Comm'r of Soc. Sec., No. 11-2633, 2012 WL 6200379, at *2 (3d Cir. Dec. 13, 2012) (summarizing the deferential standard of review). Substantial evidence is defined as "more than a mere scintilla," meaning "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 400 (1971); see also Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012) (using the same language as Richardson). The Court may not weigh the evidence or substitute its own conclusions for those of the ALJ. Malave v. Astrue, No. 08-4551, 2009 WL 3151142, at *5 (D.N.J. Sept. 29, 2009).

### B. Analysis

Plaintiff raises four primary objections to the ALJ decision. First, she argues that the ALJ did not have substantial evidence to support the conclusion that Plaintiff would not be disabled if she stopped abusing drugs and alcohol. Second, she argues that the ALJ failed to consider the effect of migraines on Plaintiff's residual functional capacity. Third, she argues that the ALJ failed to consider relevant testimony by Plaintiff's father. Finally, she argues that the ALJ failed to call a vocational expert when evaluating Plaintiff's ability to work.

### i. Whether substantial evidence supports the finding that Plaintiff's impairments would not meet, or medically equal, the regulatory impairment listings if she stopped abusing drugs

Plaintiff argues that the ALJ's conclusion that she would not be disabled if she stopped abusing drugs is without support of substantial evidence. [Pl. Br. at 32.] Plaintiff objects to the fact that, while analyzing the effect of Plaintiff's drug use on her disability under 20 C.F.R. § 404.1535, the ALJ accorded

"[g]reat weight" to the state agency's consulting doctors' reports. [R. at 27, 278-294, Exhibits 7F-10F.] Plaintiff argues that these reports all stated there was "insufficient medical evidence" to evaluate Plaintiff's claim.[1] [Pl. Br. at 34-35.] Plaintiff also argues that Dr. Shore's notes, on which both the ALJ and the state agency's consultants relied, indicate that Plaintiff "present[ed] the same symptoms while she was sober" as when she was using drugs. [Id. at 37.]

The Commissioner contends that Dr. Shore observed that Plaintiff functioned well when sober and that her impairments worsened in correlation with Dr. Shore's observations of Plaintiff's drug abuse, even when she declined drug tests or denied drug use. [Def. Opp'n at 6-7.] The Commissioner argues

---

[1] On August 10, 2009, Jane Curran conducted a psychiatric review and wrote: "It appears likely that these [hiatuses from treatment with Dr. Shore] were periods when [Plaintiff's] drug use exaccerbated [sic] her problems, but there is no evidence in the file for these periods. There is insufficient medical evidence to rate this claim." [R. at 290.]
On August 12, 2009, Jose Acuna wrote that the medical evidence of record "has termed [Plaintiff's] migraines occasional, but overall does not provide an adequate overview of migraine treatment, efficacy, or frequency. There is insufficient evidence through which to fully assess the physical component of the claim." [R. at 292.]
On November 12, 2009, Joshua Weisbrod conducted a case analysis and stated that the medical evidence of record "in the file has been reviewed and shows there is still insufficient medical evidence prior to the DLI [date last insured] 9/30/06 to evaluate." [R. at 293.]
On November 19, 2009, Carol Bruskin conducted a case analysis and concluded that a "[r]eview of the evidence in file indicates that there is insufficient evidence to assess this claim for that period." [R. at 294.]

that, based on Dr. Shore's notes as well as the state agency
reports, there was sufficient evidence to support the ALJ's
finding that substance abuse was material to her disability.
[Id.]

Courts in the Third Circuit have held that the claimant has
the burden of proof in establishing that drug abuse is or is not
a material factor contributing to disability. See Davis v.
Astrue, 830 F. Supp. 2d 31, 38-39 (W.D. Pa. 2011) (noting that
the Third Circuit declined to resolve the burden issue in McGill
v. Comm'r of Soc. Sec., 288 Fed. Appx. 50, 52-53 (3d Cir. 2008)
and citing district court opinions and other circuit court
opinions placing the burden on the plaintiff-claimant). However,
the ALJ still must identify "substantial evidence" to support his
conclusion of materiality. Davis, 830 F. Supp. 2d at 39 (citing
Brueggemann v. Barnhart, 348 F.3d 689, 695 (8th Cir. 2003)).

In this case, Dr. Shore's notes are some medical evidence,
more than a mere scintilla, of the fact that Plaintiff
demonstrated high enough functionality to be doing well in
college and approaching her degree when she was clean and sober.
Dr. Shore's notes also reveal that when Plaintiff demonstrated
signs of drug abuse, including post-acute withdrawal, her overall
functionality appeared to decline. The ALJ also noted a lack of a
full manic episode, absent drug use -- a contention that
Plaintiff does not dispute. Dr. Curran also interpreted Dr.

11

Shore's notes to indicate that Plaintiff's mood stabilized when she stopped using drugs and that during periods of sobriety she "was functional, although not without some symptoms . . . ." [R. at 290.] A reasonable person might accept this evidence as adequate to support the conclusion that drug addiction or alcoholism was a contributing factor material to the determination of disability. See Hagans, 694 F.3d at 292 (setting forth the "substantial evidence" standard).

In conducting his analysis of the listed impairments, ALJ Timm concluded that, absent drug abuse, Plaintiff "would have mild restriction in activities of daily living, only moderate difficulties in social functioning, only moderate difficulties in concentration, persistence or pace, and no episodes of decompensation." [R. at 27.] The ALJ determined that Plaintiff's remaining limitations "would not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation" under 20 C.F.R. Pt. 404, Subpt. P, Appx. 1, listing 12.04. Therefore "the 'paragraph B' criteria would not be satisfied and neither would [t]he 'paragraph C' criteria." [Id.] The ALJ concluded that Plaintiff would not be disabled if she stopped using drugs.

Under the deferential standard by which the ALJ's factual determinations must be judged, the Court finds there is

12

sufficient medical evidence in the record to affirm the ALJ's determination on this point.

The fact that state agency consulting doctors found the medical record to be deficient in certain regards does not erase the medical evidence within Dr. Shore's notes. The consulting doctors found no evidence in the record that warranted reconsideration of Plaintiff's denial of benefits. More importantly, the consulting doctors who found the medical record insufficient in some respects were not applying the same standard this Court must apply, and neither were they evaluating precisely the issue now before the Court. It appears that the consulting doctors were evaluating Plaintiff's physical limitations. [See R. at 292 ("insufficient evidence through which to fully assess the physical component of the claim"); R. at 293 (finding no change in the evidence regarding Plaintiff's migraines).]

Plaintiff argues that the ALJ misread Dr. Shore's notes in two ways. First, Plaintiff argues that "although she had some improvement with Depakote, it was not a panacea. . . . [S]he was not by any means without symptoms while she was not using drugs and was on Depakote." [Pl. Br. at 35.] No one, not even the ALJ, suggests that Plaintiff would be symptom-free without drug use. To the contrary, the ALJ found that plaintiff "would still have occasional migraine episodes and would need consistent treatment to maintain her bipolar disorder controlled." [R. at 27.] The ALJ

13

stated that Plaintiff's remaining limitations would have more than a minimal impact on her ability to perform basic work activities. [Id.] However, the ALJ also concluded that, absent drug abuse, Plaintiff would not be so limited as to qualify as disabled under the Act. Plaintiff's suggestion that she would still exhibit symptoms absent drug use is not a sufficient basis for this Court to disrupt the ALJ determination.

Second, Plaintiff objects to the ALJ's statement that "[a]s soon as she began presenting symptoms, [Dr. Shore] accurately suspected an addiction relapse." [Pl. Br. at 36.] Plaintiff assumes that the ALJ was referring to Dr. Shore's August 18, 2004, entry in which he questions whether Plaintiff's panic attack was triggered by addiction. [Id.; R. at 249.] Plaintiff points out that Dr. Shore did not conclude that Plaintiff's panic attack was caused by addiction, and argues that it was improper for the ALJ to presume "from a question mark that the claimant is abusing drugs" and that "ALJs are not permitted to make medical guesses, especially in psychiatric cases." [Pl. Br. at 37.]

It is not clear to the Court that the ALJ meant to refer only to the August 18 entry in stating that Dr. Shore accurately suspected that Plaintiff relapsed into drug use during the time when she was his patient. Although Plaintiff denied using drugs to Dr. Shore, and refused to take a drug test on at least one occasion, Dr. Shore suspected Plaintiff was using drugs when she

14

exhibited post-acute withdrawal symptoms, for example, or when she requested more medication before she should have run out of the old prescription. In fact, the record shows that Plaintiff had an inpatient detoxification during that period of time but still told Dr. Shore that she had not used opiates or other drugs in the past week. [R. at 252.] When Dr. Shore wrote Plaintiff of his concerns about her drug use and to terminate their relationship, he suspected that Plaintiff was using drugs. [R. at 254.] The Court does not read the ALJ's statement about Dr. Shore's supposition as referring only to Dr. Shore's suspicion of drug use on August 18, 2004, but in general to her documented drug use during the period when she avoided questions about, or tests to determine, her drug use. The ALJ's statement about Dr. Shore's suspicions is not inaccurate, and it is not grounds for reversing the ALJ's determination.

The Court will defer to the ALJ's determination.

**ii. Whether the ALJ failed to consider the effect of migraines on Plaintiff's residual functional capacity**

The ALJ found that Plaintiff, if she stopped using drugs, would have an RFC "to perform light work as defined in 20 CFR 404.1567(b) except that she should be limited to perform simple, routine, repetitive tasks in no significant interaction with the general public, and with only occasional interaction with supervisors and co-workers." [R. at 27.] The ALJ states generally that "the undersigned has considered all symptoms and the extent

15

to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . ." [R. at 28.] The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms; however the claimant's statements concerning the intensity, persistence and limited effects of these symptoms are not credible to the extent they are inconsistent" with the RFC. [Id.] The ALJ stated he gave great weight to Dr. Shore's records and those of the state agency's consultants. [Id.] The ALJ found his RFC determination to be supported by

> treatment sources' records and statements; the claimant's credible subjective complaints, her testimony and demeanor at the hearing; the course of treatment and medication, the claimant's activities of daily living, the consultative evaluations in file, and in part by the residual functional capacity medical opinions by the State Agency's consultants in file.

[Id.]

Plaintiff argues that the ALJ must consider all impairments, even non-severe impairments, when making his RFC assessment, under 42 U.S.C. § 423(d)(2)(B), and that the ALJ gave "no consideration . . . to these headaches in making the RFC determination." [Pl. Br. at 22-23.] Plaintiff faults the ALJ for recognizing that Plaintiff "cannot, and should not, take medications prescribed by Dr. Roeltgen" -- Tramadol, a narcotic -- to treat her migraines because of her substance abuse disorder,

16

but nonetheless concluding that Plaintiff could handle limited light work. [R. at 22, 27.] Plaintiff argues the ALJ failed to include migraines in the RFC determination, despite finding the migraines severe. [Pl. Br. at 26; R. at 22.] Plaintiff claims "[i]t is a mystery of how this RFC accommodates sudden blinding headaches." [Pl. Br. at 26.]

The Commissioner responds that the ALJ considered Plaintiff's migraines and acknowledged their severity, but also accepted the characterization of the migraines as infrequent. [Def. Opp'n at 8.] The Commissioner argues that "[t]here is nothing about Dr. Roeltgen's assessment" or that of any other doctor "to suggest that plaintiff's migraine headaches had resulted in any work-related limitations beyond the ALJ's residual functional capacity finding." [Id.] On this point, the Commissioner cites Neugebauer v. Astrue, No. 09-261J, 2011 WL 996801, at *5 (W.D. Pa. Mar. 17, 2011), in which the plaintiff, who suffered from migraines, similarly argued that the ALJ failed to consider migraines in determining her RFC. The court in that case stated that the ALJ acknowledged that migraines were a severe impairment, but that "plaintiff has not suggested any additional restrictions arising from her migraines that would be more limiting than those already accounted for in the ALJ's residual functional capacity finding." Neugebauer v. Astrue, 2011 WL 996801, at *5.

17

In reply, Plaintiff attempts to distinguish <u>Neugebauer</u> by saying that, in that case, "the plaintiff had not suggested any limitations due to migraine headaches" but here, the "ALJ found that the neurologist found that the plaintiff was getting good relief with Tramadol" and the "plaintiff should not, and does not, take it." [Pl. R. Br. at 4-5.] Plaintiff argues that her migraines are more frequent and more severe than the neurologist reported. [<u>Id.</u> at 5.] Plaintiff suggests that "the RFC should have included the limitation that the plaintiff can be expected to have, without prior warning, three or four severe headaches of at least several hours duration" per month. [<u>Id.</u>]

While the ALJ did not specifically mention migraines in his discussion of Plaintiff's RFC, the ALJ did consider the medical evidence concerning Plaintiff's migraines and, in his discussion of Plaintiff's RFC, specifically discounted Plaintiff's testimony regarding the intensity and frequency of her symptoms. [R. at 22, 28.] Courts "ordinarily defer to an ALJ's credibility determination because he or she has the opportunity at a hearing to assess a witness's demeanor." <u>Coleman v. Comm'r of Soc. Sec.</u>, No. 11-3938, 2012 WL 3835403, at *2 (3d Cir. Sept. 5, 2012). In addition, there certainly is evidence in the record that Plaintiff's migraines were infrequent. [R. at 295 (Dr. Roeltgen stating the migraines "have never been very frequent" and occurred in late 2006 and early 2007 three to four times a

18

month); R. at 292 (consultant Jose Acuna stating that the medical evidence of record "has termed the migraines occasional" before stating the record does not provide an "adequate overview of migraine treatment, efficacy, or frequency."); R. at 249 (Dr. Shore stating migraines occurred occasionally, in an August 24, 2004, entry).] The ALJ explicitly recognized that, if Plaintiff stopped abusing drugs, she "would still have occasional migraine episodes," but that "no brain lesion has been found related to migraine." [R. at 27.] The ALJ determined, based on the evidence before him, that the limitation would not prevent Plaintiff from engaging in limited light work. [Id.]

The Court does not agree with Plaintiff that Neugebauer is distinguishable here. In that case, as here, the ALJ determined that migraines were a severe impairment. See Neugebauer, 2011 WL 996801, at *5. In Neugebauer, the plaintiff also suffered from chronic low back pain, history of head injury, neck pain, hepatitis C, several mental disorders and a history of substance abuse. Id. at *1. The ALJ found that the combination of impairments did not meet or equal any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, Appx. 1. Id. Likewise, here, Plaintiff's combination of impairments, absent substance abuse, did not meet or medically equal the impairments in Appendix 1. [R. at 27.] In both cases, the ALJ determined that the plaintiffs could perform light work, with certain additional restrictions.

19

Neugebauer, 2011 WL 996801, at *2; R. at 27. Although the plaintiff in Neugebauer did suffer from other physical ailments, whereas Plaintiff here suffers from mental disorders, there similarly is no indication that the limitations of occasional migraines would prevent Plaintiff from engaging in light work any more than any of Plaintiff's other impairments would.

The Court finds that the ALJ did consider migraines in assessing Plaintiff's RFC and work ability. The Court will defer to the ALJ's determination on this point.

### iii. Whether the ALJ failed to consider relevant testimony by Plaintiff's father

Plaintiff argues the ALJ failed to consider testimony by Plaintiff's father. [Pl. Br. at 29.] Plaintiff suggests that Social Security Ruling ("SSR") 06-03p "requires the adjudicator to give proper consideration to the observations of lay persons." [Id.] Specifically, Plaintiff argues that Mr. Buffington testified "to his observations of his daughter's use of drugs on her ability to function" and that the drugs "generally helped, not hindered, her function," but the ALJ "does not mention this evidence" in his summary of Mr. Buffington's testimony. [Id. at 31.] Plaintiff also argues that the ALJ omitted from his summary of the testimony Mr. Buffington's assertion that health professionals see his daughter only when she is functioning at a fairly good level." [Id.]

20

On the first point, contrary to Plaintiff's assertion, the ALJ does mention that Plaintiff took drugs as "self-medication for migraines," which implies that she believed the drugs eased her headaches or at least allowed her to cope better with them. [R. at 26.] The ALJ did not overlook this testimony. On the second point, it seems self-evident that doctors only see patients when they are at least able to leave the house for a session. If, for example, a patient who occasionally suffers from an inability to get out of bed, and describes these symptoms to a medical professional while not bedridden, it is again self-evident that the treating physician did not see the patient and his or her lowest functionality. Failure of the ALJ to state explicitly what seems an obvious truth about treatment of individuals with severe mental disorders does not constitute grounds for remand.

Plaintiff argues that SSR 06-03p requires the ALJ to explain why he chose to discredit the testimony from Plaintiff's father. [Pl. Br. at 31.] Under that ruling, Mr. Buffington would qualify as an "other source," meaning a non-medical source whose relationship with the plaintiff is not based on a "professional" relationship. See SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006) (defining "medical source" and "other sources"). The ruling states:

> . . . the adjudicator generally should explain the
> weight given to opinions from these 'other sources,' or

> otherwise ensure that the discussion of the evidence in
> the determination or decision allows a claimant or
> subsequent reviewer to follow the adjudicator's
> reasoning, when such opinions may have an effect on the
> outcome of the case. In addition, when an adjudicator
> determines that an opinion from such a source is
> entitled to greater weight than a medical opinion from
> a treating source, the adjudicator must explain the
> reasons . . . .

Id. at *6.

In this case, the ALJ did not explicitly state that he found Mr. Buffington's testimony not credible, but he did state that he afforded great weight to the medical exhibits. [R. at 27 ("Great weight is accorded the medical opinions . . . ."); R. at 28 ("I give great weight to Dr. Shore's treatment records and to the state agency's consultants assessments").] The ALJ clearly based his reasoning and decision primarily on the medical exhibits, which he found to be more credible and persuasive than other testimony.

In addition, the cited portions of Mr. Buffington's testimony are cumulative of Plaintiff's testimony, because she described her self-medication for migraines,[2] and other symptoms and experiences that may or not be contained within the medical exhibits. [See e.g., R. at 42-55 (describing all symptoms and difficulties Plaintiff experiences).] The ALJ explicitly found her "statements concerning the intensity, persistence and

_____

[2] See R. at 49-51 (describing drug treatment of migraines, as well as the intensity and frequency of migraines).

limiting effects of these symptoms . . . not credible" to the extent that they were inconsistent with the RFC. [R. at 28.] SSR 06-03p requires the ALJ to explain his reasoning for placing greater weight on testimony by "other sources" than on testimony by medical opinions, but such is not the case here. The ruling also states that the "adjudicator generally should explain the weight given to opinions" from other sources, "when such opinions may have an effect on the outcome of the case." SSR 06-03p, 2006 WL 2329939, at *6. Because Mr. Buffington's testimony is largely cumulative of Plaintiff's own testimony, which the ALJ expressly found not credible, Mr. Buffington's opinions do not have a significant effect of the outcome of the case. Although the ALJ could have been more meticulous in assessing each witness's testimony and explaining reasons for each determination of weight, the failure to do so in this case is not grounds for remand.[3]

**iv. Whether the ALJ erred in failing to call a vocational expert when evaluating Plaintiff's ability to work**

---

[3] Even if this omission were in error, remand is not warranted under the harmless error doctrine. See Butterfield v. Astrue, No. 06-0603, 2011 WL 1740121, at *6 (E.D. Pa. May 5, 2011) (finding harmless error when an ALJ examined medical evidence and weighed that evidence against lay testimony, and stating that "courts have found that an ALJ's failure to address lay opinion testimony, although technically in violation of applicable legal standards, did not require remand since the testimony would not have changed the outcome of the case").

Plaintiff argues that the ALJ erred by (1) not calling a vocational expert to testify on the effect of non-exertional limits on Plaintiff's ability to do work, and (2) failing to provide notice of an intention to take administrative notice that Plaintiff's non-exertional limitations did not significantly erode her occupational base and provide her the opportunity to respond. [Pl. Br. at 28-29.] Plaintiff argues this error violates the holding in Sykes v. Apfel, 228 F.3d 259 (3d Cir. 2000) and the Social Security Acquiescence Ruling ("SSAR") 01-1(3), 2011 WL 65745 (Jan. 25, 2001), adopting the Sykes approach for Plaintiffs in the Third Circuit.[4] [Pl. Br. at 27.] Plaintiff asserts that the ALJ did not call a vocational expert, did not provide Plaintiff with notice, and did not rely upon evidence from the Dictionary of Occupational Titles or a learned treatise. [Id. at 28.] Plaintiff argues that the ALJ impermissibly based his decision solely on the grid rule in 20 C.F.R. Pt. 404, Subpt. P, Appx. 2. [Id.]

The Commissioner responds that the ALJ relied on SSR 85-15, in making his determination, a practice consistent with Sykes and SSAR 01-1(3). [Def. Opp'n at 8.] The Commissioner concludes that the ALJ properly found that Plaintiff was capable of performing

---

[4] Plaintiff mistakenly refers to this ruling as SSAR 01-03(3), rather than SSAR 01-1(3).

unskilled light work and thus was entitled to rely on the medical-vocational guidelines. [Id. at 9.]

In the Third Circuit, an ALJ considering an application from a Plaintiff with mental impairments must either (1) call a vocational expert, (2) provide notice to Plaintiff so that she could call her own vocational expert, or (3) rely on an SSR and explain how "Plaintiff's specific limitations relate to the SSRs relied upon." Fisher v. Astrue, No. 11-1634, 2012 WL 983691, at *7 (D.N.J. Mar. 21, 2012); see also Allen v. Barnhart, 417 F.3d 396, 407 (3d Cir. 2005) (holding that if the ALJ relies on an SSR, "it must be crystal-clear that the SSR is probative as to the way in which the nonexertional limitations impact the ability to work, and thus, the occupational base" and "if the ALJ plans to rely on an SSR rather than make an individualized determination based on the testimony of a vocational expert, the ALJ ought to give the claimant notice of this"); Meyler v. Comm'r of Soc. Sec., 238 Fed. Appx. 884, 890-91 (3d Cir. 2007) (vacating the ALJ's decision and remanding because the ALJ did not explain how the plaintiff's "mental impairments relate to the categories or examples in SSR 85-15, or to any aspect of SSR 83-10").

In this case, the ALJ concluded that there would be a significant number of jobs that Plaintiff could perform with her limitations. [R. at 29.] Using boilerplate language, the ALJ

cited four SSRs in the course of stating how to assess Plaintiff's ability to work:

> If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either 'disabled' or 'not disabled' depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decision-making unless there is a rule that directs a conclusion of 'disabled' without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decision-making (SSR 85-15).

[Id.] The ALJ's analysis includes only three sentences and does not include further discussion of, or references to, any SSRs:

> If the claimant stopped the substance abuse, the claimant would not have the residual functional capacity to perform the full range of light work. However, the additional limitations that would remain have little or no effect on the occupational base of unskilled light work. Considering this residual functional capacity, and the claimant's age, education and work experience, a finding of 'not disabled' is therefore appropriate under the framework of 202.20.

[Id.]

The ALJ's determination on this last point is incomplete. It is undisputed that the ALJ did not call a vocational expert and did not provide Plaintiff with notice that would give her the opportunity to call her own vocational expert. Furthermore, it is not clear that the ALJ based his actual analysis on any of the SSRs cited, despite the boilerplate references. Even if he did,

26

the ALJ did not explain how Plaintiff's "mental impairments relate to the categories or examples" in the SSRs. Meyler, 238 Fed. Appx. at 890. This section of the ALJ's decision includes only conclusions; there is no analysis or reasoning aside from a reference to the framework of Rule 202.20 in 20 C.F.R. Pt. 404, Subpt. P, Appx. 2, and that analysis does not meet the requirements of Sykes and SSAR 01-1(3). Thus, the Court finds that the ALJ's conclusion that Plaintiff's non-exertional limitations, principally her mental illness and migraine headaches, did not significantly erode her occupational base is not supported by substantial evidence. Accord Fisher, 2012 WL 983691, at *7 (vacating and remanding a Social Security appeal to the ALJ, who did not explain how Plaintiff's mental impairments related to the categories or examples in the SSRs).

The Court will vacate and remand the matter to allow the ALJ to develop the evidentiary record and thereafter reconsider how Plaintiff's specific limitations affect her ability to perform unskilled work in a job that constitutes substantial gainful employment, i.e., in a job that exists in substantial numbers in the national economy.

## IV. CONCLUSION

For the reasons stated above, this Court finds that the ALJ erred at the fifth step of the regulatory analysis. The Court will vacate the ALJ's determination and remand the case for

27

further consideration consistent with this decision. The accompanying Order will be entered.


**March 4, 2013**                          **s/ Jerome B. Simandle**
Date                                       JEROME B. SIMANDLE
                                           Chief U.S. District Judge

28